# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA FREED,<br><br>Plaintiff,<br><br>HOME DEPOT U.S.A., INC., a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 18cv359-BAS (LL)<br><br>**ORDER RE MOTION TO QUASH AND/OR MODIFY SUBPOENAS**<br><br>**[ECF No. 23]** |

Currently before the Court is Plaintiff's November 1, 2018 Motion to Quash and/or Modify Subpoenas ("Mot.") [ECF No. 23], Defendants' November 8, 2018 Opposition to the Motion ("Oppo.") [ECF No. 24], and Plaintiff's November 15, 2018 Reply ("Reply") [ECF No. 25]. For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

## **BACKGROUND**

The instant matter was initiated on October 26, 2017 when Plaintiff filed a complaint in San Diego Superior Court alleging a claim for negligence for injuries resulting from a

slip and fall at a Home Depot store the year before. See ECF No. 1, Exh. A. In her Complaint, Plaintiff states that "on or about October 23, 2016, at approximately 1:30 p.m., Plaintiff FREED was a business invitee at the HOME DEPOT retail store located at 5920 Fairmount Avenue, San Diego CA 92120." Id. at ¶ 7. Plaintiff states that she "was shopping for home products." Id. She "asked an employee where a particular items was located" and was "directed to a particular isle [sic] by the HOME DEPOT employee." Id. She further states that "[u]pon her arrival at the isle [sic], Plaintiff FREED noticed the isle [sic] was partially blocked by a HOME DEPOT gate at the end of the isle [sic]" and that there were "machinery and products on pallets throughout the isle [sic]." Id. Plaintiff also noticed that "other customers [were] shopping throughout the isle [sic]." Id. "This led [Plaintiff] to believe the isle [sic] was open and accessible for customers." Id. Accordingly, [Plaintiff] entered the isle [sic] and as she was shopping, slipped on the floor of the isle [sic] and fell to the ground causing serious injuries and damages." Id. Plaintiff alleges that "as a proximate result of Defendants' wrongful acts and omissions of creating/maintaining a dangerous condition, [Plaintiff] sustained injuries and trauma to her body and nervous system which necessitated the care and treatment by medical practitioners, and will continue to necessitate treatment in the future. . . ." Id. at ¶ 12. Plaintiff further alleges as a "proximate result of the creation/maintenance of a dangerous condition of the store isles [sic] owned/controlled/maintained by Defendants," Plaintiff suffered "damages and injuries as set forth herein, including medical expenses and costs for various medical providers and supplies, in an amount which has not been ascertained at this time but will

be set forth according to proof at time of trial." Id. at ¶ 13.  Plaintiff also alleges "loss of wages which said amount will be set forth at time of trial" and "general pain and suffering. . . ." Id. at ¶¶ 14, 15. Plaintiff seeks the following relief: (1) general damages; (2) medical costs; (3) future medical care; (4) loss of wages; (5) future loss of wages; (6) costs of suit incurred; and (6) other relief the Court deems "just and proper." Id. at 6.

On February 15, 2018, Defendant Home Depot filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446 on the basis that "complete diversity of citizenship exists." ECF No. 1.  On March 16, 2018, Plaintiff filed a motion to remand the action to state court. ECF No. 8. On May 25, 2018, Plaintiff's motion to remand was denied. ECF No. 12.

On October 16, 2018, Plaintiff filed a Motion to Quash or Modify Subpoenas [ECF No. 19], which was stricken from the record on October 18, 2018, because it was not filed in compliance with Judge Adler's Chambers Rules, which required the filing of a "Joint Motion for Determination of Discovery Dispute" to bring a discovery dispute before the Court. ECF No. 20.  On October 29, 2018, this case was transferred to Magistrate Judge Linda Lopez for all further proceedings. ECF No. 21.

On October 31, 2018, counsel for Plaintiff, Mr. Darin Andreos, and counsel for Defendant, Ms. Elizabeth Rein and Mr. Robert Dixon, jointly contacted the Court regarding a discovery dispute.  See ECF No. 22.  In regard to the dispute, the Court issued a briefing schedule and the parties filed their motion, opposition, and reply in accordance with that order.   Id.; see also Mot., Oppo., Reply.

3
18cv359-BAS (LL)

# LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

Fed. R. Civ. P. 45 establishes the rules for subpoenas served upon individuals and entities that are not parties to the underlying lawsuit. See Fed. R. Civ. P. 45. Upon a timely motion, the court must quash or modify a subpoena that: "(i) fails to allow reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if

no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The court may, on motion, quash or modify a subpoena that "requires (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii).

A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005); McCoy v. Southwest Airlines, Co., 211 F.R.D. 381, 384 (C.D. Cal. 2002). The party who moves to quash a subpoena has the burden of persuasion under Rule 45(c)(3).[1] See Moon, 232 F.R.D. at 637. "[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed." Chevron Corp. v. Donziger, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citing Knoll, Inc. v. Moderno, Inc., 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012)); see also Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-F ("The general rule is that a party has no standing to move to quash a subpoena served upon a third party except as to privilege claims relating to any documents being sought") (citing California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., 299 FRD 638, 643 (E.D. Cal. 2014).

---

[1] The provisions of subdivision (c) of Fed. R. Civ. P. 45 were moved to subdivision (d) as part of the 2013 amendments. See Fed. R. Civ. P. 45 advisory committee notes.

Courts have broad discretion to determine whether a subpoena is unduly burdensome. See Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994); see also Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). For example, a subpoena is unduly burdensome where it seeks to compel testimony of a witness or production of documents regarding topics unrelated to or beyond the scope of the litigation. See Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 813-14 (9th Cir. 2003) (holding subpoenas properly quashed where their overbreadth led the court to conclude that such subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information."). Moreover, "if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed [] would be by definition 'undue.'" Compaq Computer Corp. v. Packard Bell Elec., Inc., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995). Again, the moving party bears the burden of establishing that a subpoena is unduly burdensome. See F.D.I.C. v. Garner, 126 F.3d 1138, 1146 (9th Cir. 1997).

In a final note, although irrelevance is not among the enumerated reasons for quashing a subpoena under Rule 45(d)(3), federal courts have incorporated relevance as a factor to be considered when ruling on motions to quash. See Moon, 232 F.R.D. at 637. Specifically, "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" and mandates the court's consideration of such factors as relevance, the serving party's need for the

requested documents, the breadth of the discovery request, the particularity with which the documents are described, and the burden imposed. Id. (internal citations omitted).

## DISCUSSION

### 1. **Parties' Positions**

Defendants seek to subpoena the following records: (1) medical records for treatment Plaintiff received before and after the alleged accident from Kaiser Permanente Central Release of Information Unit (hereinafter "medical records"); (2) billing records for the same from Kaiser Permanente Central Support Services Revenue Cycle (hereinafter "billing records"); and (3) radiology records for the same from Kaiser Permanente San Diego Radiology (hereinafter "radiology records"). Mot. at Exhs. 3, 4, 5. The three subpoenas seek records from October 2011 to the present. Id. The subpoenas were issued on August 22, 2018, but due a clerical error, the subpoenas were reissued on September 13, 2018. Id.

Plaintiff seeks an order from the Court modifying or quashing the three subpoenas, arguing that the desired records are not relevant and proportional. Mot. at 7-11. First, Plaintiff argues that "medical records not related in some way to [Plaintiff's alleged] hamstring injury are not relevant to the parties' claims and defenses, and do not meet the standard for proportionality." Id. at 7. Specifically, Plaintiff argues that "[b]ecause Kaiser is Freed's primary medical provider, the Kaiser records will contain records that unquestionably have no connection to a claim of a ruptured hamstring, including gynecological and psychological/psychiatric records." Id. Plaintiff requests that the Court

"modify the Kaiser subpoenas to require production of only those medical records that are relevant to the claims and defenses, and are proportional to the needs of this case" (e.g., a production that is limited to "certain departments" in Kaiser). Id. Second, Plaintiff argues that the "medical records not relevant and proportional are subject to Freed's right of privacy, and Home Depot's insistence that they be produced does not meet the weighing test that courts must apply." Id. at 8. Plaintiff requests that the Court only "permit production of only those records reasonably related to the claim of a hamstring injury." Id. Third, Plaintiff argues that "[b]illing records before the accident have no possible relevance."[2] Id. Plaintiff concedes that "[b]illing records after the accident are potentially relevant because the billings go to the amount of Freed's claimed damages for her injury." Id. at 11. Accordingly, Plaintiff requests "[t]hat the subpoena [for billing records] should be modified to require production of only those billings from October 23, 2016 to the present." Id.

As a preliminary matter, Defendants oppose Plaintiff's Motion on the grounds that "Plaintiff's challenges to the subpoenas are untimely." Oppo. at 9. Specifically, Defendants contend that "the designated compliance date for the Subpoenas was October

---

[2] Plaintiff represents that Home Depot subpoenaed Plaintiff's billing records for treatment from October 16, 2011 to the present. Mot. at 10. Upon the Court's review of the subpoena, the time period requested is "from 10/01/2011 to present." Exh. 4, at 4.

11, 2018" and Plaintiff did not file her rejected[3] Motion to Quash until October 16, 2018. Id. at 9-10. Defendants further contend that the instant Motion to Quash was not filed until November 1, 2018, "far after the designated date for compliance" and that "no unusual circumstances or good cause [exist] that justified the untimely motion." Id. at 10. Second, Defendants contend that Plaintiff has "fail[ed] to meet her burden as her arguments are based entirely on unsupported conclusory statements." Id. Specifically, Defendants argue that "Plaintiff offers no evidence in support of her position that subpoenaed medical and related billing records are irrelevant." Id. at 11. Third, Defendants contend that "Plaintiff fails to offer any authority or evidence in support of her position that the right to privacy prohibits Home Depot from accessing Plaintiff's medical records in discovery." Id. at 13. Fourth, Defendants contend that "Plaintiff fails to articulate how she will be harmed by the production of the records" noting that Defendants have proposed a protective order to Plaintiff that "would automatically designate all medical records produced by the third party as confidential." Id. at 14. In addition, as part of the meet and confer process, Defendants have "agreed to return all Plaintiff's gynecology records, if any, upon receipt." Id. at 14-15. Finally, Defendants contend that "the subpoenas seek discoverable information and are not overbroad" as they "are relevant to Plaintiff's claims and Home Depot's defenses" and "are proportional to the needs of the case." Id. at 15-17.

---

[3] Plaintiff originally filed a Motion to Quash or Modify the Subpoenas on October 16, 2018 [ECF No. 19], which was rejected by the Court because it was not filed in compliance with Judge Adler's Chambers Rules [ECF No. 20]. Plaintiff later filed the instant Motion to Quash on November 1, 2018. ECF No. 23.

9

18cv359-BAS (LL)

In her Reply, Plaintiff argues that her Motion is timely and "any delay in bringing this Motion were due in large part to Home Depot's delays and unwillingness to participate meaningfully and timely in the meet-and-confer process." Reply at 2. Plaintiff further replies that Home Depot's arguments regarding the scope of discovery in this case "fails the proportionality test." Id. at 6.

### 2. **Plaintiff's Challenges to the Subpoenas are Untimely**

Defendants contend that Plaintiff's challenges to the subpoenas are untimely. The Court agrees. The parties do not dispute that Home Depot served the subpoenas to Plaintiff on September 13, 2018 and designated the compliance date as October 11, 2018. Mot. at 2-5; Oppo. at 9. Plaintiff sent letters objecting to the subpoenas on October 3, 2018. See Andreos Declaration at ¶ 5. Plaintiff filed her rejected Motion to Quash on October 16, 2018 [ECF No. 19], and the instant Motion on November 1, 2018. Even if the Court uses the date that Plaintiff filed her rejected Motion to Quash it was untimely for the reasons set forth below.

Objections and motions to quash are independent provisions within Rule 45 and are each subject to different deadlines. Objections are permitted to be lodged by the *non-party* who is the subject of the subpoena. Fed. R. Civ. P. 45(d)(2)(a) ("*A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection. . . .*") (emphasis added). Here, Plaintiff was not the person being commanded to produce documents – Kaiser Permanente was. See Mot. at Exhs. 3, 4, 5. Based on the Court's review of the relevant procedural

history in this case, Kaiser Permanente never objected or otherwise sought protection from the subpoena. See Mot.; Oppo.; Reply; Docket. Instead, Plaintiff sent letters objecting to the subpoenas on October 3, 2018. See Andreos Declaration at ¶ 5. Even if this provision applied to Plaintiff, the letters objecting to the subpoenas were untimely. Based on the subpoena service date, the 14-day maximum objection periods set forth in Rule 45(d)(2)(B) expired on September 27, 2018. But Plaintiff's objections were filed on October 3, 2018, six days later than the respective objection deadlines allowed. In any event, as a party to the case who was not the subject of the subpoena, Plaintiff was required to file a motion to quash.

Motions to quash under Rule 45(d)(3)(A)(iii) are required to be filed in a "timely" fashion, which courts have read to mean before the compliance date designated in the subpoena. See, e.g., N. Am. Co. for Life & Health Ins. v. Philpot, 2010 WL 4017065, at *2-3 (S.D. Cal. Nov. 24, 2010); Anderson v. Abercrombie & Fitch Stores, Inc., 2007 WL 1994059, *8 (S.D. Cal. July 2, 2007). Here, the designated compliance dates for the Subpoenas was October 11, 2008. See Mot. at Exhs. 3, 4, 5. Even using the date that Plaintiff filed the rejected Motion to Quash of October 16, 2018, Plaintiff's Motion to Quash is untimely because it was not filed before the compliance date of October 11, 2018.

Plaintiff's Motion is silent regarding the timeliness of her motion or any explanation of why her motion was filed after the designated compliance date for the Subpoenas. Plaintiff, for the first time, raises a new argument in her Reply regarding the timeliness of her motion. See Reply. Plaintiff argues that her Motion was timely "with the timing

requirements in Judge Adler's Chambers Rules". Reply at 2-3. Plaintiff argues that "[u]nder Judge Adler's Chambers Rules, when there is a discovery dispute, the parties are to file a joint motion within 45 days after the dispute arises." Id. at 3. Plaintiff argues that "[i]f Home Depot's argument were to prevail, the effect would be to negate or invalidate Judge Adler's Chamber Rule on the filing of a joint motion for discovery disputes." Id. Plaintiff's argument is without merit because it fails to take into account that Chambers Rules are to be read in conjunction with the Federal Rules of Civil Procedure and controlling authority. Accordingly, to the extent that Plaintiff had any question about the deadline to file her Motion to Quash in light of the discrepancy alleged by Plaintiff, she should have clarified an acceptable deadline with the Chambers of Judge Adler.

Based on Plaintiff's untimely challenge, any objections are waived unless unusual circumstances or good cause exist. The Court finds that unusual circumstances and good cause exist here to grant in part Plaintiff's request to modify Defendants' subpoenas.

### 3. Unusual Circumstances

Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." Moon 232 F.R.D. at 636; see also McCoy, 211 at F.R.D. at 385. Plaintiff argues that the subpoena is overbroad because "the only injury Freed claims in this case is a ruptured hamstring" and that "the Kaiser records will contain records that unquestionably have no connection to a claim of a ruptured hamstring, including gynecological and psychological/psychiatric records." Mot. at 7. Plaintiff also

12

18cv359-BAS (LL)

notes that Plaintiff "has not made a specific claim for emotional distress" and that "[p]sychological or psychiatric records have no relevance to the parties' claims or defenses and cannot be proportional to the needs of this case." Id. at 7-8.

Defendants' respond in the Opposition that "it is possible that Plaintiff has discussed the subject accident, her injury, and/or her alleged pain and suffering with her psychiatrist and/or gynecologist." Oppo. at 12. However, Defendant also notes that during a September 20, 2018 meet and confer, "[Defendants' counsel, Ms. Rein] attempted to resolve the dispute informally and suggested that the use of the medical and billing records be governed by a protective order and also offered to return all Plaintiff's gynecological records upon receipt." Dixon Decl. at ¶ 7.

The Court finds that most of the information sought in the subpoena is relevant and proportional to the claims and defenses in this case. However, Defendants do not establish the relevance of Plaintiff's psychiatric/psychological or gynecological information sought to the claims or defenses at issue and do not rebut Plaintiff's showing that the information sought is overbroad. It is undisputed that Plaintiff has not made a specific claim for emotional distress. See Complaint. Similarly, Defendants merely speculate that Plaintiff may have discussed her alleged injury with her gynecologist and/or her psychiatrist. Oppo. at 12. Because a court can limit "unduly burdensome discovery," the Court **GRANTS** Plaintiff's Motion to modify the subpoenas for medical records and radiology records to exclude Plaintiff's gynecological and psychiatric/psychological records (to the extent they exist). See Fed. R. Civ. P. 26(b)(2)(c) (requiring the court to limit the "extent of discovery

otherwise allowed" if "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit. . . .).

Plaintiff has also asserted a "constitutional right of medical privacy" in her medical records. Mot. at 8-10. California law recognizes a constitutional right to privacy in an individual's medical history.[4] See Pettus v. Cole, 49 Cal. App. 4th 402, 440 (Cal.Ct.App. 1996) ("the 'zones of privacy' created by article I, section 1 [of the California Constitution], extend to the details of one's medical history"); Palay v. Superior Court, 18 Cal. App. 4th 919, 932 (Cal.Ct.App. 1993) ("[F]undamental to the privacy of medical information 'is the ability to control [its] circulation. . . .'"). The constitutional right of privacy is not absolute, but is subject to invasion where a compelling public interest is involved. See Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604 (C.D. Cal. 1995). Defendant Home Depot claims that "Plaintiff placed her medical injuries at issue by bringing the lawsuit" and "Home Depot is entitled to delve into Plaintiff's medical history to assess the extent of her alleged injuries. . . ." Oppo. at 14. However, "the court must construe the concept of 'waiver' narrowly and a compelling public interest is demonstrated only where the material sought is *directly relevant* to the litigation." Tylo v. Superior Court, 55 Cal. App. 4th 1379, 1387 (Cal. Ct. App. 1993) (internal citation omitted) (emphasis in original). The party seeking the constitutionally protected information bears the burden of establishing that the information is directly relevant to the claims at issue. Id.

---

[4] Because this is a diversity case, California's law of privilege applies. See Fed.R.Evid. 501.

Here, Defendants have not met their burden. As set forth above, Plaintiff has not made a claim for emotional distress in this case, and Defendants' merely speculate that Plaintiff may have discussed her alleged injury with her gynecologist and/or her psychiatrist. Home Depot is not entitled to delve into Plaintiff's medical history in areas that are not relevant or proportional to her alleged injury from the incident at issue in this litigation. See Fed. R. Civ. P. 26(b)(2)(c). Accordingly, for the same reasons as set forth above, the Court **GRANTS** Plaintiff's Motion to modify the subpoenas for medical records and radiology records to exclude Plaintiff's gynecological and psychiatric/psychological records (to the extent they exist). The Court further finds that any remaining privacy concerns held by the Plaintiff with regard to her medical records and/or radiology records can be addressed by the parties' protective order.[5] See ECF Nos. 29 and 30. Any responsive information produced by Kaiser shall be appropriately designated and protected under the parties' Stipulated Protective Order.

### 4. Good Cause

In addition to unusual circumstances, the Court also finds that good cause exists here for the Court to consider Plaintiff's Motion. Plaintiff provides an explanation in her Reply

---

[5] On January 4, 2019, the parties submitted a Joint Motion for Protective Order in order to "expedite the production of discovery material, facilitate the prompt resolution of disputes over confidentiality of discovery material, and adequately protect information the parties are entitled to keep confidential." ECF No. 29 at 2. The Court granted the parties' Joint Motion for Protective Order on the same day. ECF No. 30. The Protective Order clearly states that the "purpose of th[e] Order is to protect the confidentiality of such materials as much as practical during the litigation." ECF No. 30, Attachment 1, at 3.

for the untimeliness of her motion noting that "the delay in filing a joint motion was due in part to Home Depot." Reply at 3-4. Plaintiff asserts that "[i]f there was a delay here, it was because Home Depot delayed substantially in discussing these issues with Freed as part of the meet and confer process." Reply at 5. Based on the Court's review of Mr. Andreos and Mr. Dixon's declarations, the parties appear to have participated in a meaningful meet and confer meeting on September 20, 2018 and exchanged correspondence in an attempt to continue meeting and conferring thereafter. See Dixon Decl. at ¶¶ 7, 8; Andreos Decl. at ¶¶ 8, 9. Accordingly, the Court finds that Plaintiff provided an explanation for the delay, and the Court finds that the delay was justified in light of the reasons stated herein.

### 5. Billing Records

Plaintiff also seeks to modify/quash the subpoena to Central Support Services Revenue Cycle which seeks "production of Freed's billing records for treatment from October 16, 2011 (five years before the accident) to the present." Mot. at 10. Plaintiff seeks to modify the subpoena to require production of the billing records from October 23, 2016 to the present. Id. at 11. Plaintiff concedes that "[b]illing records after the accident are potentially relevant because the billings go to the amount of Freed's claimed damages for her injury." Id. at 11. However, Plaintiff argues that "billings for medical treatment before the accident have no possible relevance." Id. Defendant opposes on the grounds that billing records are relevant "as to whether a pre-existing injury caused and/or contributed to the alleged injury and/or contributed to the alleged injuries Plaintiff attributes to the incident." Oppo. at 12. Defendant further argues that "the billing records associated with, for

16

18cv359-BAS (LL)

example, the physical therapy Plaintiff received after her multiple knee surgeries may be helpful in evaluating the alleged costs associated with Plaintiff's claim for future medical damages." Id.

Plaintiff seeks the following relief: (1) general damages; (2) medical costs; (3) future medical care; (4) loss of wages; (5) future loss of wages; (6) costs of suit incurred; and (6) other relief the Court deems "just and proper." Complaint at 6. Based on the evidence presented, the Court fails to see how billing records from five years before the alleged injury are relevant to evaluate alleged costs associated with Plaintiff's claim for future medical damages. Defendants will receive Plaintiff's medical and radiology records from Kaiser, with the exception of her psychological/psychiatric and gynecological records, which will be helpful in evaluating the extent of pre-existing injury and/or whether it contributed to the alleged injury Plaintiff attributes to this incident. Thus, while the Court finds the billing records are relevant, it also finds the subpoena is overbroad to the extent that it seeks production far exceeding what would be necessary to evaluate Plaintiff's alleged injury in this case. The Court finds it appropriate to limit the proposed subpoena's scope for records from Kaiser Permanente Central Support Services Revenue Cycle to billing records dated from October 1, 2015 (approximately one year before the accident) to the present.

/ / /

/ / /

/ / /

# **CONCLUSION**

In conclusion, with respect to the subpoenaed records from Kaiser Permanente Central Release of Information Unit for medical records and Kaiser Permanente San Diego Radiology for radiology records, the Court finds that Defendants' are entitled to obtain the subpoenaed records, with the exception of Plaintiff's gynecological and psychological/psychiatric records (to the extent they exist). Accordingly, Plaintiff's Motion to Quash and/or Modify the Subpoena to Kaiser Permanente Central Release of Information Unit and Kaiser Permanente San Diego Radiology is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's request to limit the subpoenas to certain departments[6] is **DENIED**. Plaintiff's request to modify the subpoenas to exclude Plaintiff's gynecological and psychiatric/psychological records (to the extent they exist) is **GRANTED**.

With respect to Defendants' subpoena to Kaiser Permanente Central Support Services Revenue Cycle for billing records, the Court finds that Defendants are entitled to obtain the billing records from October 1, 2015 to the present. Accordingly, Plaintiff's Motion to Quash and/or Modify the Subpoena to Kaiser Permanente Central Support Services Revenue Cycle is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's request to limit the subpoena for billing records to the date of the accident, October 23, 2016, to the present is **DENIED.** Plaintiff's request to modify the subpoena for a more

---

[6] Plaintiff seeks to limit the subpoenas to the following departments: Urgent Care, Orthopedics, Neurology, Physical Therapy, Hospital Admission, and Orthopedics. Mot. at 2.

limited scope of time for billing records from October 1, 2015 through the present is **GRANTED.**

All records produced pursuant to the subpoenas shall be appropriately designated pursuant to the Protective Order entered in this case in order to maintain the confidentiality of those records.

**IT IS SO ORDERED**.

Dated: January 14, 2019

Honorable Linda Lopez
United States Magistrate Judge